UNITED STATES of America,
Plaintiff–Appellee,

v.

August GHILARDUCCI, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Harry C. Sweet, Jr., Defendant–Appellant.

Nos. 05–10499, 05–10508.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 2006.

Filed Jan. 29, 2007.

Sheila K. Oberto, Esq., USF–Office of the U.S. Attorney, Fresno, CA, for Plaintiff–Appellee.

Harry M. Drandell, Esq., Law Office of Harry M. Drandell, Roger T. Nuttall, Esq., Nuttall & Coleman, Fresno, CA, for Defendant–Appellant.

Before: D.W. NELSON, COWEN,* and BERZON, Circuit Judges.

## MEMORANDUM **

These appeals concern schemes to defraud investors orchestrated by appellants August C. Ghilarducci and Harry C. Sweet, Jr. Both appellants challenge their convictions for mail fraud and money laundering; Sweet also challenges his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the factual and procedural history of this case, we need not recount it here.

## I. Sweet's Claims

### A. Jury Instructions

Sweet challenges four aspects of the district court's jury instructions concerning his good-faith defense. We review de novo whether jury instructions adequately cover the defense's theory. *United States v. Sayakhom*, 186 F.3d 928, 939–40 (9th Cir. 1999).

Sweet's first claim concerns the district court's misreading of one word of the jury instructions. In its oral instruction, the district court stated: "It is also not a defense to charges of mail fraud that the defendant may have been gullible or negligent"; the instruction should have re-

---

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

ferred to the *victim* instead of the *defendant.* Sweet did not object to this misreading at trial, so we review for plain error, *United States v. McIver,* 186 F.3d 1119, 1130–31 (9th Cir.1999), and conclude that there was no plain error here. The written instructions that were provided to the jury contained the correct standard; during rebuttal, the government showed the written instructions to the jury and stated the correct standard; and the sentence immediately following the misread one refers to a victim. This error thus did not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings," *United States v. Ross,* 338 F.3d 1054, 1058 (9th Cir.2003) (internal quotation marks omitted), and we decline to reverse.

■ Sweet next argues that he was entitled to a clarifying instruction similar to that described in *United States v. Southwell,* 432 F.3d 1050, 1055 (9th Cir.2005), where we held that in order to convict the defendant, the jury had to find unanimously that the elements of the crime had been established *and* unanimously agree that the affirmative defense—there, insanity—had not been established. However, Sweet's good-faith defense is materially different than the defense of insanity. In this case, unlike *Southwell,* the jury necessarily rejected Sweet's defense when it concluded that the elements of mail fraud had been established. It would have been impossible for the jury to conclude that Sweet had the requisite intent to defraud, yet at the same time find that he acted in good faith. *See generally United States v. Munoz,* 233 F.3d 1117, 1131–32 (9th Cir. 2000) (explaining that "[a] good faith instruction is adequate to cover a defense theory that the defendant did not act with fraudulent intent"). Thus, Sweet was not entitled to this instruction.

■ Sweet next argues that the district court erred by refusing to instruct the jury that if it found that he acted in good faith, it should find him not guilty. However, the district court did instruct the jury that "[t]he good faith of Defendant Harry Sweet is a complete defense to the mail fraud charges of the indictment because good faith on the part of the defendant, is, simply inconsistent with the intent to defraud alleged in those charges." This instruction "adequately cover[s] that defense theory," and accordingly, the court's refusal to give Sweet's proposed instruction was not error. *United States v. Trevino,* 419 F.3d 896, 901 (9th Cir.2005) (internal quotation marks omitted).

Finally, Sweet argues that it was error for the district court to instruct the jury that "[w]hile good faith is a defense to mail fraud, an honest belief in the ultimate success of the enterprise is not, in itself, a defense." However, in *United States v. Beecroft,* 608 F.2d 753, 757 (9th Cir.1979), we approved this precise articulation of the law, and it remains valid. Thus, the district court did not err in so instructing the jury.

**B. Sufficiency of the Evidence**

Next, Sweet argues that the government presented insufficient evidence to support his convictions for mail fraud and money laundering. There is sufficient evidence to sustain a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

"The elements of mail fraud under 18 U.S.C. § 1341 are: (1) the existence of a scheme to defraud, and (2) using or causing the use of the mails to further the scheme." *United States v. Serang,* 156

F.3d 910, 914 (9th Cir.1998). In order to convict a defendant of money laundering under 18 U.S.C. § 1957, the government must show: "(1) the defendant knowingly engaged in a monetary transaction; (2) he knew the transaction involved criminal property; (3) the property's value exceeded $10,000; and (4) the property was derived from a specified unlawful activity." *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir.2003).

■ Sweet argues that he acted in good faith throughout the life of his investment program. Mail fraud requires the specific intent to defraud, *see Sayakhom*, 186 F.3d at 941, and money laundering requires that the defendant "knew the property involved in the transaction represented the proceeds of some form of unlawful activity," *id.* at 943. Thus, if Sweet had a good-faith belief that his program was legitimate, he could have been acquitted on both charges. However, the government presented sufficient evidence to convince a reasonable jury beyond a reasonable doubt that Sweet did not act in good faith. The government presented evidence that: (1) Sweet commingled all of the investors' money with his own funds from the start; (2) Sweet immediately began spending the investors' money on his personal expenses; (3) Sweet repeatedly lied to his investors, promising them a safe investment that would yield 25% returns every eight weeks even though he did not have such a program; (4) Sweet paid $450,000 for a confirmation of funds (COF) letter that, according to the government's expert, banks usually provide free of charge; and (5) even after the Costa Rican bank told him in no uncertain terms that Brian Newman had never been its employee and that there was no account in Sweet's name holding $10 million, Sweet neither challenged Newman or Ghilarducci nor told anyone that he had been scammed. This evidence was suffi-cient to allow a reasonable jury to conclude that Sweet did intend to defraud the investors, and thus reject his good faith defense and convict him of the mail fraud and money laundering charges.

## C. Hearsay Ruling

Sweet argues that the district court erred by denying his pretrial motion to exclude statements of Ghilarducci, his alleged co-conspirator, as inadmissible hearsay. A district court's hearsay rulings are reviewed for abuse of discretion. *United States v. Bishop*, 291 F.3d 1100, 1108 (9th Cir.2002).

■ The district court declined to conduct a hearing on Sweet's motion and instead told the parties that when a hearsay statement was actually presented at trial, the court would consider offering specific instructions concerning the statement. We have held repeatedly "that the order of proof is within the sound discretion of the trial court" and that "[t]he procedure of conditionally admitting co-conspirator's statements subject to later motions to strike is well within the court's discretion." *United States v. Zemek*, 634 F.2d 1159, 1169 (9th Cir.1980) (internal citation omitted). This is precisely the procedure that the district court employed here, and it was appropriate.

## D. Motion for Severance

Sweet next claims that the district court erred by refusing to sever his trial from Ghilarducci's. We review a denial of a motion for severance for an abuse of discretion. *United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir.1999). " 'The test for abuse of discretion by the district court is whether the joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in just one way, by ordering a separate trial.' " *Id.* (quoting

*United States v. Baker,* 10 F.3d 1374, 1387 (9th Cir.1993)).

■ Sweet argues that the trials should have been severed because he and Ghilarducci presented mutually antagonistic defenses. However, "[t]o be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *United States v. Throckmorton,* 87 F.3d 1069, 1072 (9th Cir.1996). Here, while Sweet argued that Ghilarducci had taken advantage of him and that he had a good-faith belief in the viability of the investment program, Ghilarducci's defense focused on blaming Newman and claiming that he did not know that the money Sweet transferred to him had been acquired from investors. The jury thus could have accepted both Sweet's and Ghilarducci's defenses and acquitted both men; accordingly, the defenses were not so mutually antagonistic as to require severance.

### E. Due Process

Sweet argues that the errors alleged above, in combination, amount to a violation of his due process rights. However, because we have rejected each of those claims, we also summarily reject this one. Nevertheless, Sweet supplements this argument with two additional claims.

■ First, Sweet alleges that the prosecutor violated his due process rights by asking him on cross-examination why, after discovering that the account in Costa Rica was a sham, he did not contact the authorities. Sweet believes that he had a right to remain silent upon learning that Ghilarducci had defrauded him because by the time he realized that he did not have an account with $10 million, he was being investigated by the Bakersfield Police Department. However, "extensive case law holds that prosecutors may argue inferences from silence in order to impeach testimony when the silence was not the result of *Miranda* warnings." *United States v. Harris,* 726 F.2d 558, 559 (9th Cir.1984). This is true even when the defendant is under criminal investigation. *See United States v. Greene,* 698 F.2d 1364, 1373–74 (9th Cir.1983). Here, "[t]he record does not indicate, nor does [Sweet] argue, that he received *Miranda* warnings." *Id.* at 1374. Accordingly, Sweet has failed to demonstrate that his due process rights were violated by the prosecutor's reference to his failure to report being defrauded by Ghilarducci.

■ Second, Sweet argues that the indictment against him should have been dismissed based on the informal immunity agreement that he entered into with the government. He argues that the government failed to show, as required by *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), that it had a source independent of his immunized statements for all the evidence that it used against him. Sweet's argument fails because his informal immunity agreement clearly and unambiguously granted him only direct use, and not derivative use, immunity. Thus, the independent-source requirement, as described in *Kastigar,* is not applicable. *See United States v. Plummer,* 941 F.2d 799, 803 (9th Cir.1991) (no Kastigar issue when immunity agreement offered direct use but not derivative immunity). Accordingly, the district court was correct to deny Sweet's motion to dismiss the indictment.

### F. Sentencing Issues

■ Sweet presents a barrage of claims regarding why his sentence should

be vacated. First, Sweet argues that the district court erred by considering, for purposes of sentencing, conduct underlying charges for which the jury acquitted him. However, the Supreme Court has rejected Sweet's legal position, holding that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). In this case, the district court considered the conduct at issue under the correct standard, and accordingly, this claim lacks merit.

■ Sweet next argues that the United States Sentencing Guidelines were over-emphasized in the presentence report (PSR). Even after *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), though, "the district court must correctly calculate the applicable range, which serves as a starting point in sentencing." *United States v. Evans–Martinez*, 448 F.3d 1163, 1167 (9th Cir. 2006) (internal quotation marks omitted). Accordingly, it was necessary for the PSR to contain frequent references to the Sentencing Guidelines.

■ Sweet also argues that he should have been sentenced to probation, rather than a term of imprisonment. However, the district court correctly calculated the Guidelines range, adequately considered the 18 U.S.C. § 3553(a) factors, and thoroughly considered and rejected Sweet's probation request. We are thus convinced that the district court imposed a reasonable sentence.

■ Sweet next argues that the PSR is chock-full of factual errors. In challenging a "presentence report, a defendant bears the burden of first showing that the disputed information is ... false or unrelia-

ble." *United States v. Kimball*, 975 F.2d 563, 567 (9th Cir.1992) (alteration in original) (internal quotation marks omitted). Here, each of Sweet's factual challenges fails for one of three reasons: (1) he has admitted the fact that he now challenges; (2) his factual challenge is based on a misreading of the PSR; (3) the challenge consists of only a bare allegation. Accordingly, his attack on his sentence is devoid of merit, and we affirm the sentence imposed by the district court.

## II. Ghilarducci's Claims

### A. Double Jeopardy

■ Ghilarducci argues that his double-jeopardy rights were violated because he was prosecuted both in Illinois and in this case for conduct that was part of the same overarching conspiracy. We review de novo whether a defendant's double jeopardy rights have been violated. *United States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir.1997).

Although both trials did concern Ghilarducci's selling of COF letters, in Illinois he was charged with RICO violations and wire fraud, while in this case he was charged with conspiracy and mail fraud. A defendant's double jeopardy rights are not violated so long as "each [statutory] provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). It is clear that these statutes do involve different elements; in short, violating the RICO statute does not necessarily involve joining a conspiracy to commit mail fraud, and joining a conspiracy to commit mail fraud does not necessarily involve committing a RICO violation. *See United States v. Luong*, 393 F.3d 913, 916 (9th Cir.2004). While Ghilarducci entreats us to look beyond the offenses charged and consider the relationship between the different charges, we

have explained that "mere overlap in proof between two prosecutions does not violate the Double Jeopardy Clause." *United States v. Saccoccia,* 18 F.3d 795, 798–99 (9th Cir.1994). Thus, Ghilarducci's double-jeopardy rights were not violated.

### B. Change of Venue

Ghilarducci next argues that the district court erred by denying his motion to transfer his trial to a district court in Illinois. We review the district court's denial of a motion for a change of venue for abuse of discretion. *United States v. Meyers,* 847 F.2d 1408, 1411 (9th Cir.1988).

 The burden is on Ghilarducci to establish the need for the transfer. *See United States v. Testa,* 548 F.2d 847, 856 (9th Cir.1977). We require specific examples to support the claim, and have "recognized that some degree of inconvenience is inevitable." *Id.* at 857. Further, we disfavor transfer when it would require severing defendants. *Id.* Here, Ghilarducci has alleged no more than mere inconvenience, and has failed to present evidence showing that he was actually harmed by the choice of venue. Further, the government had an interest in trying him in California: its witnesses were in California, the acts of mail fraud occurred in California, and transferring Ghilarducci's case would have required that his trial be severed from Sweet's. Accordingly, the district court did not abuse its discretion in denying Ghilarducci's motion to change venue.

### C. Motion for Severance

Ghilarducci also argues that his motion for severance was wrongly denied because he and Sweet presented mutually antagonistic defenses. We review a denial of a motion for severance for an abuse of discretion. *Mayfield,* 189 F.3d at 899.

This argument is devoid of merit for the same reasons discussed with regard to Sweet's parallel severance contention. Accordingly, the district court did not abuse its discretion in denying this motion.

### D. Excluded Evidence

 Ghilarducci next argues that the district court erred by excluding, under Rule 403 of the Federal Rules of Evidence, a tape recording of his conversation with FBI Special Agent Robert Klimas, who was posing as a potential investor. In this conversation, Ghilarducci advised Klimas to fully research COF transactions before engaging in one. We review a district court's decision to exclude evidence under Rule 403 for abuse of discretion. *United States v. Gonzalez–Torres,* 309 F.3d 594, 601 (9th Cir.2002).

The district court did not abuse its discretion by excluding this evidence—the evidence lacked probative value because it involved a cold call, while Sweet did not speak to Ghilarducci until after he had been screened by an intermediary; the evidence could have confused the jury because it was unclear whether it concerned the same type of transaction that Sweet and Ghilarducci engaged in; it was cumulative of the warnings contained in the COF Agreement that Sweet and Ghilarducci executed; and it was not even helpful to Ghilarducci, because it showed that he was willing to sell worthless COF letters. Thus, we will not disturb the district court's ruling on this issue.

### E. Sufficiency of the Evidence

Ghilarducci's final challenge is to the sufficiency of the evidence undergirding his convictions for mail fraud and money laundering. As noted above, there is sufficient evidence to sustain a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Jackson*, 72 F.3d 1370, 1381 (9th Cir.1995).

■ Ghilarducci argues that the jury could not have had sufficient evidence to convict him of these charges because it also acquitted him of other, related charges. However, "when the evidence is otherwise sufficient to convict, a defendant cannot successfully challenge his conviction on one count on the ground that it is inconsistent with his acquittal on another count." *United States v. Franco*, 136 F.3d 622, 630 (9th Cir.1998). Thus, these arguments, which compose the bulk of Ghilarducci's claim on this issue, miss the mark.

■ Ghilarducci also argues that his mail fraud conviction cannot stand because "there was no evidence presented that [he] directed Mr. Sweet to write any letters to his investors [ ]or otherwise assisted[ed] Mr. Sweet in composing or writing the letters." However, Ghilarducci need not have known that Sweet would use the mail; it is sufficient that such "use can reasonably be foreseen, even though not actually intended." *Pereira v. United States*, 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Here, in the Christmas letter (which formed the basis of the mail fraud charge on which Ghilarducci was convicted), Sweet informed his investors that the attorney for the bank in London had received the funds authentication letter. This information was certainly derived from Ghilarducci's December 8 fax to Sweet informing him that the COF letter had arrived in London; in fact, the event Ghilarducci reported could not have occurred because there was no actual transaction in the works with any borrower, lender, or investor. Because the Christ-

mas letter contained false information that Sweet acquired from Ghilarducci, the jury could have inferred that Ghilarducci and Sweet had communicated about using the false COF letter to quiet Sweet's investors' concerns. This conclusion is supported by the evidence that both Ghilarducci and Sweet knew that the COF program was a fraud, that it is common for con artists to move money between a number of layers and individuals to obfuscate their fraud and create a defense, and that Ghilarducci knew Sweet had sent him money acquired from investors. Thus, the jury could have reasonably concluded that Sweet engaged in the transaction with Ghilarducci to obscure his own fraud; that Ghilarducci's role was to serve as another layer between Sweet's investors and their money; and that as part of this role, Ghilarducci would provide Sweet with stories about the money that Sweet could pass along to the investors. Here, the Christmas letter did convey information that Sweet received from Ghilarducci, and Ghilarducci could have reasonably foreseen that Sweet would have used the mail to disseminate the information to his sundry investors. Accordingly, the government presented sufficient evidence to sustain Ghilarducci's conviction for mail fraud.

■ Finally, with respect to the money laundering charge, the government presented sufficient evidence that Ghilarducci knowingly engaged in a monetary transaction that involved "criminal property," *see Rogers*, 321 F.3d at 1229, the only element of the money laundering charge that Ghilarducci challenges. Sweet testified that he told Ghilarducci that the $450,000 was not from Sweet's personal funds, even though the COF application Sweet signed attested otherwise. Coupled with the other evidence presented by the government regarding the nature of the fraudulent scheme and viewed in the light most favor-

able to the government, sufficient evidence was presented for the jury to convict Ghilarducci of money laundering.

AFFIRMED.