**UNITED STATES Of America,
Plaintiff–Appellee,**

v.

**Joann Winfield GILLAM and Lizzie Bea
McGirt, Defendants–Appellants.**

Nos. 97–50462, 97–50466.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1998.

Decided Feb. 18, 1999.

Tracy W. Young, Rossbacher & Associates, Los Angeles, CA, and Karen L. Woods, Los Angeles, CA, for defendants–appellants.

Marc S. Harris, Assistant United States Attorney, Los Angeles, CA, for plaintiff–appellee.

Before: William C. Canby, Jr. and Sidney R. Thomas, Circuit Judges, and William W. Schwarzer,* Senior District Judge.

SCHWARZER, Senior District Judge.

Lizzie Bea McGirt ("McGirt") and Joann Winfield Gillam ("Gillam") appeal from their conspiracy, smuggling and bribery convictions. They contend that their convictions should be reversed because the district court failed to sever their trials and because the prosecutor discriminated in his exercise of peremptory strikes. They also assert sentencing errors, arguing that the district court misapplied the guideline by basing their sentences on the benefit received by the payers of the bribe and erred in denying McGirt a downward adjustment for acceptance of responsibility. We affirm the convictions and find no error in the sentences.

## FACTS AND PROCEDURAL HISTORY

McGirt was employed as an inspector by the Food and Drug Administration ("FDA") at the Los Angeles harbor. McGirt's duties included ensuring that no prohibited foodstuffs were approved for importation into the United States. Gillam operated a courier service and acted as a liaison between importers and the FDA.

In August 1995, McGirt approached her supervisor at the FDA, Richard Guillen ("Guillen"), and described a scheme whereby McGirt falsified importation entry documents for prohibited foodstuffs in exchange for

---

* Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

**1276**

bribes from particular importers. Gillam, using her courier service, delivered the fraudulent entry documents to the importers, received the bribes and shared them with McGirt. McGirt asked Guillen to continue the operation with Gillam after McGirt's impending retirement.

Guillen informed the Federal Bureau of Investigation ("FBI"), which instructed him to join in the scheme. Guillen began receiving documents relating to shipments of various importers and was paid by McGirt and Gillam for his assistance in clearing those shipments. Guillen taped conversations with McGirt and Gillam in which they acknowledged that their involvement in the bribery scheme relating to smuggling of prohibited food products predated Guillen's recruitment. When the FBI arrested McGirt and Gillam, Gillam admitted her involvement in the scheme and made a detailed statement describing it, including McGirt's involvement.

Gillam and McGirt were each charged with violating 18 U.S.C. § 371 (1994) (conspiracy), 18 U.S.C. § 201 (1994) (bribery of a public official), and 18 U.S.C. § 545 (1994) (smuggling). Both pled not guilty. Prior to trial, Gillam, joined by McGirt, filed a motion to sever the trial which the district court denied. During jury selection, counsel for Gillam (who, along with McGirt, is African–American) objected to the government's peremptory challenge of a male, Hispanic juror. The district court denied the objection without making specific findings.

In his opening statement, Gillam's counsel made a comment placing blame for the scheme on McGirt. Counsel for McGirt objected and the court admonished the jury. Gillam did not testify at the trial and offered no evidence to implicate McGirt. The government, however, introduced a redacted version of Gillam's post-arrest statement through the testimony of FBI Agent Houston. While Gillam's post-arrest statement implicated McGirt by name, Agent Houston referred only to an unnamed FDA contact. The court admonished the jury to consider Gillam's statement against Gillam only. After this testimony McGirt renewed her motion to sever on the basis that the reference to an FDA contact implicated McGirt. The court denied the renewed motion to sever. The jury convicted appellants on all counts.

In sentencing appellants under the bribery guideline, the court determined the benefit received to be not the amount of the bribes but the profits realized by the importers who benefited from the illegal scheme. *See* United States Sentencing Guidelines ("U.S.S.G.") § 2C1.1 (1997). It granted Gillam's request for a downward adjustment for acceptance of responsibility but denied all other requests for downward adjustments and departures. The court then sentenced McGirt to forty-one months' and Gillam to thirty months' imprisonment.

## DISCUSSION

### I. SEVERANCE

■ We review the denial of a severance for abuse of discretion. *See United States v. Vasquez–Velasco,* 15 F.3d 833, 844 (9th Cir. 1994). Appellants must show that joinder of the trials " 'was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial.' " *United States v. Ramirez,* 710 F.2d 535, 546 (9th Cir.1983) (quoting *United States v. Abushi,* 682 F.2d 1289, 1296 (9th Cir.1982)).

Appellants contend that they suffered undue prejudice because (1) they had antagonistic, mutually exclusive defenses and (2) McGirt was denied her right to confront Gillam on her post-arrest statement.

### A. *Antagonistic Defenses*

■ Where the possibility of antagonistic defenses exists, the tailoring of the relief to be granted is left to the discretion of the district court. *See Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Severance is required only when the codefendants' defenses are mutually exclusive, that is, when acquittal of one codefendant necessarily results in the conviction of the other. *See United States v. Adler,* 879 F.2d 491, 497 (9th Cir.1988). This is not such a case.

Appellants' reliance on *United States v. Tootick,* 952 F.2d 1078, 1080–83 (9th Cir. 1991), is misplaced. In *Tootick,* each of the codefendants, in opening statements, direct testimony and cross-examination, sought to pin criminal responsibility on the other. The

trial judge gave only general instructions to the jury and failed to safeguard defendants' right to a fair trial. On the extraordinary record in that case, we reversed defendants' convictions, finding that the failure to sever resulted in manifest prejudice. *See id.* at 1086.

In this case, McGirt points only to Gillam's attorney's comment in his opening statement attempting to portray Gillam as the unwitting dupe of the real culprits, McGirt and Guillen. The court admonished the jury that opening statements are not evidence. Gillam offered no evidence and did not seek to gain acquittal by implicating McGirt. This, therefore, is not a case of mutually exclusive defenses.

### B. *Inculpatory Post–Arrest Statement*

■ Appellants next contend that, Gillam not having taken the stand, the introduction of Gillam's post-arrest statement resulted in undue prejudice because it denied McGirt her Sixth Amendment right to confront an adverse witness. A redacted version of Gillam's post-arrest statement was introduced through the testimony of the arresting agent. The agent's testimony did not mention McGirt by name but did make three indirect references to her as someone who "worked at FDA" who "was getting ready to retire." Appellants contend that severance was required because the statement implicitly referred to McGirt even after redaction.

Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), held that a defendant is denied her Sixth Amendment right of confrontation when a facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant. *See id.* at 127–28, 88 S.Ct. 1620. In *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), the Court held that a codefendant's redacted confession which replaced a defendant's proper name with an obvious indication of deletion, such as blank spaces or the word "delete," is not sufficient to comply with *Bruton's* protective rule. *See id.* at 1157. Specifically, the *Gray* Court found the redaction, "Me, deleted, deleted, and a few other guys," to be insufficient. *See id.* Following *Gray,* we recently held that a redaction re-

placing the defendant's name with "person X" is clearly impermissible, because

> [t]he codefendant was pointing an accusatory finger at someone and it was not difficult for the jury to determine that that person was the other defendant on trial.

*United States v. Peterson,* 140 F.3d 819, 822 (9th Cir.1998).

The violation of *Gray* in this case is, if anything, more patent. Replacing McGirt's name with "someone who worked at FDA . . . who was getting ready to retire" not only made it clear that Gillam was pointing an accusatory finger at someone else but also left little doubt for the jury that it was the codefendant, McGirt.

■ Once we find a *Bruton* error, the prosecution has the burden of showing that the error was harmless beyond a reasonable doubt. *See id.* In this case the testimony erroneously admitted was merely cumulative of other overwhelming and essentially uncontroverted evidence properly admitted, including Guillen's detailed testimony describing McGirt's involvement and the recordings in which McGirt admitted her participation in the scheme. *See Brown v. United States,* 411 U.S. 223, 231, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (finding *Bruton* error harmless where erroneously admitted testimony was cumulative of other overwhelming and uncontroverted evidence). The impact of the indirect reference to McGirt was not so devastating that the jury could not be expected to follow the judge's admonition to consider the statement only against Gillam. *See Bruton,* 391 U.S. at 135, 88 S.Ct. 1620 ("It is not unreasonable to conclude that in many such cases [where a *Bruton* error is found] the jury can and will follow the trial judge's instructions to disregard such information."); *United States v. Guerrero,* 756 F.2d 1342, 1348 (9th Cir.1984) (finding *Bruton* violative admission "not so devastating that the jury could not be expected to disregard it if the district court had instructed them to do so."). In light of the strength of the government's case against McGirt, we find the error to be harmless beyond a reasonable doubt.

## II. BATSON CHALLENGE

In the course of voir dire, defense counsel challenged the government's use of a per-

emptory challenge to excuse an Hispanic individual under *Batson*. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Counsel argued that the strike was evidence of purposeful racial discrimination in light of the fact that only one African–American woman was on the entire venire. The government explained the challenge on the ground that the prospective juror had been unemployed for a year and that it was concerned about his ability to serve as a conscientious juror. There is no evidence that the government challenged other members of minority groups and, indeed, two jurors with Latino surnames were seated on the jury. The court, without explanation, denied the *Batson* challenge and excused the juror.

■ Appellants contend that the court erred in failing to make an initial ruling on whether the defense had made out a prima facie case of discrimination and in failing to make findings as to whether the government had offered a race-neutral reason. Defendants' first contention is without merit: Once a prosecutor has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot. *See Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

■ *Batson* requires the trial judge "to determine if the defendant has established purposeful discrimination." 476 U.S. at 98, 106 S.Ct. 1712. Neither *Batson* nor its progeny requires that the trial judge make specific findings, beyond ruling on the objection. *See Hernandez*, 500 U.S. at 363, 111 S.Ct. 1859. The district court's determination on the issue of intent to discriminate is reviewed under a deferential standard. *See id.* at 364, 111 S.Ct. 1859. The prosecutor's explanation, to satisfy *Batson*, need only be facially valid; it need not be persuasive or even plausible so long as it is race-neutral. *See Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

■ Appellants contend that the district court committed reversible error in denying appellants' *Batson* challenge because the prosecutor's explanation for the strike was fundamentally unfair and not race-neutral. But as noted in *Purkett*, in which two Black jurors were struck because they had long, curly and unkempt hair and facial hair, an explanation passes muster "unless discriminatory intent is inherent in [it]." 514 U.S. at 768, 115 S.Ct. 1769; *see also United States v. Bauer*, 75 F.3d 1366, 1370–72 (9th Cir.) (no discriminatory intent where defendant unable to rebut prosecutor's race-neutral explanation that challenges based on prospective jurors' housing locale, even though later determined that geographical area reflected racial division), *superseded on other grounds by* 84 F.3d 1549 (9th Cir.1996); *United States v. Annigoni*, 68 F.3d 279, 282–83 (9th Cir.1995) (mere fact that male juror of Asian heritage was challenged proved nothing when plausible race-neutral explanation was articulated by defense), *superseded on other grounds by* 96 F.3d 1132 (9th Cir.1996) (en banc); *United States v. Castro–Romero*, 964 F.2d 942, 943 (9th Cir.1992) (no discriminatory intent where prosecutor explained that an African–American prospective juror challenged because, in voir dire for a trial involving sexual abuse of a minor, the prospective juror had stated that children could lie "in such matters"). Because the prosecutor's explanation was race-neutral, we find no error.

## III. CALCULATION OF BENEFIT RECEIVED UNDER § 2C1.1(b)(2)(A)

■ United States Sentencing Guideline § 2C1.1(b)(2)(A) provides for an increase of the offense level for bribery on the basis of "the value of the payment, the benefit received ... in return for the payment, or the loss to the government from the offense, whichever is greatest...." Appellants contend that the court misapplied the guideline when it determined the benefit received with reference to the profit realized by the importers from the illegal imports made possible by the bribery scheme. That profit was $558,000, while the bribes received by McGirt and Gillam were only $54,500 and $10,075, respectively.[1] We review the district court's

---

1. Although their roles in the scheme and the amounts received by the two defendants differed,

the district court found at sentencing that

application of sentencing guidelines de novo. *See United States v. Shrestha,* 86 F.3d 935, 938 (9th Cir.1996).

Section 2C1.1(b)(2)(A) states:

If the value of the payment, the benefit received or to be received in return for the payment, or the loss to the government from the offense, whichever is greatest, exceeded $2,000, increase by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit).

Appellants contend that the guideline limits the district court to increasing the offense level with reference to the "personal benefit ... each [defendant] derived from the bribery scheme." The text of the guideline does not compel so restrictive a reading. The Background Note of the guideline, moreover, plainly contemplates that benefit to the payer of the bribe be taken into account:

Where the value of the bribe exceeds the value of the benefit or the value of the benefit cannot be determined, the value of the bribe is used because it is likely that the payer of such a bribe expected something in return that would be worth more than the value of the bribe. *Moreover, for deterrence purposes, the punishment should be commensurate with the gain to the payer or the recipient of the bribe, whichever is higher.*

*Id.* Background (emphasis added). While frequently it will be the payer of the bribe who receives the sentence, that is not invariably so. The guideline applies equally where, as here, the recipients of the bribes are the defendants. The underlying deterrence policy, articulated in the last sentence of the Background Note, applies no less in the latter situation. It plainly envisions that the punishment should fit the crime, and the measure of the crime is the greater of the benefit to the payer or the recipient.

While we have not heretofore addressed this issue, we are persuaded by the decisions of the Seventh, Second and Eighth Circuits interpreting this provision. In *United States v. Muhammad,* 120 F.3d 688 (7th Cir.1997), Muhammad solicited a $2,500 bribe from a defendant in a civil trial to sway the jury in his favor. Muhammad was convicted of bribery and the court, in calculating the sentence,

determined the benefit to be not the $2,500 bribe but the $933,000 jury verdict in the underlying case because the defendant in that case would not have had to pay it had Muhammad succeeded in influencing the verdict. *See id.* at 700; *see also United States v. Falcioni,* 45 F.3d 24, 28 (2d Cir.1995) (benefit calculated to be the amount of the defendant's friend's tax liability, which defendant sought to reduce by bribing an IRS agent); *United States v. Ziglin,* 964 F.2d 756, 758 n. 3 (8th Cir.1992) (same).

Appellants' reliance on *United States v. Ellis,* 951 F.2d 580, 585 (4th Cir.1991), is misplaced. In *Ellis,* the court of appeals simply rejected the government's cross-appeal from a determination that the § 2C1.1 enhancement for benefit received does not permit the court to take into account benefits received by entities not participants in the bribery scheme. As the court put it, "[n]either the provision itself nor precedent requires that vicarious liability apply to § 2C1.1 calculations." *Id.* at 585; *see also United States v. Agostino,* 132 F.3d 1183, 1197–98 (7th Cir.1997) (no increase in offense level on the basis of benefit to an unrelated third party). The rationale of *Ellis* does not apply where, as here, the calculation rests on the benefit received by the payers of the bribe.

## IV. DOWNWARD ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY

Whether or not a defendant has accepted responsibility for his crime is a factual determination to which the clearly erroneous standard of review applies. *See United States v. Innie,* 7 F.3d 840, 848–49 (9th Cir.1993).

McGirt contends that she was entitled to the two-level adjustment because she went to trial in good faith to present her entrapment defense, she did not testify, she did not obstruct justice and she submitted a letter to the court at sentencing expressing her remorse. However, McGirt's conduct does not invoke any of the relevant considerations under U.S.S.G. § 3E1.1 Application Note 1 (1997). While "[c]onviction by trial ... does

"[McGirt] and Ms. Gillam were equally involved in this offense."

**1280**

not automatically preclude a defendant from consideration," and "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial," *id.* Application Note 2, nothing in the circumstances of this case required the district court to find that McGirt had "clearly demonstrate[d] an acceptance of responsibility for [her] criminal conduct."

AFFIRMED.