**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frank R. BOCHICCHIO, Defendant–
Appellant.**

**United States of America,
Plaintiff–Appellee,**

v.

**John R. Crawford, Defendant–
Appellant.**

**United States of America,
Plaintiff–Appellee,**

v.

**Mark E. Crawford, Defendant–
Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Kirk Allen Johnson, Defendant–Appellant.**

No. 99–10610, 00–10280, 00–10355, 00–10371.

D.C. No. CR 96–05127–OWW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 18, 2001.

Submitted Oct. 18, 2001*.

Decided Nov. 30, 2001.

---

* The panel unanimously finds this case suitable for decision without oral argument as to United States v. John R. Crawford, No. 00–10280. Fed. R.App. P. 34(a)(2).

Before GOODWIN, HUG, and THOMAS, Circuit Judges.

## MEMORANDUM**

Mark Crawford, John Crawford, Frank Bochicchio, and Kirk Johnson appeal their convictions for racketeering in violation of 18 U.S.C. §§ 1962 and 2, racketeering conspiracy in violation of 18 U.S.C. § 1962(d), and various other racketeering related crimes. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we AFFIRM. Because the parties are familiar with the facts of this case, we discuss them here only where necessary to explain our decision.

### A.  Mark Crawford

Mark Crawford contends that Texas Ranger Oscar Rivera "interrogated" him without advising him of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under *Miranda* and its progeny, the term "interrogation" refers to either express questioning or its functional equivalent. *See Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Here, Rivera's questions and statements did not amount to interrogation because, in light of all the circumstances, Rivera had no reason to know that his conversation with Crawford was reasonably likely to elicit an incriminating response from Crawford. *See United States v. Booth*, 669 F.2d 1231, 1238 (9th Cir. 1981).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Crawford further contends that his trial should have been severed from that of co-defendant Kirk Johnson because certain extrajudicial statements made by Johnson were conveyed to the jury in violation of Crawford's Sixth Amendment Confrontation Clause rights under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The *Bruton* rule provides that a defendant is deprived of his Sixth Amendment right of confrontation when a facially incriminating confession of a nontestifying codefendant is introduced at their joint trial. *See Bruton*, 391 U.S. at 136, 88 S.Ct. 1620. Crawford argues that the confluence of Johnson's opening statement, Johnson's cross-examination of Officer Harrison and Agent Cartwright, and the government's closing argument conveyed to the jury that Johnson had implicated Crawford in his extrajudicial statements. We reject Crawford's argument because inferentially incriminating statements that do not refer directly to the defendant and that become incriminating only when linked with evidence introduced later at trial fall outside the scope of the *Bruton* rule. *See Gray v. Maryland*, 523 U.S. 185, 196, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998).

## II. Kirk Johnson

Kirk Johnson makes a number of arguments challenging his conviction and sentence. Johnson initially argues that the district court abused its discretion by denying his motion to sever his trial from that of his co-defendants. Here, Johnson fails to demonstrate that he was prejudiced by any "spillover" evidence. The district court provided appropriate limiting instructions to the jury and the jury returned discrete and selective verdicts against each of the co-defendants. *See United States v. Vasquez–Velasco*, 15 F.3d 833, 846 (9th Cir.1994). The introduction of more evidence against Johnson's co-defendants than against Johnson

does not establish that joinder was improper. *See United States v. Matta–Ballesteros*, 71 F.3d 754, 771 (9th Cir.1995). Where the possibility of antagonistic defenses exists, "[s]everance is required only when the codefendants' defenses are mutually exclusive, that is, when acquittal of one codefendant necessarily results in the conviction of the other." *United States v. Gillam*, 167 F.3d 1273, 1276 (9th Cir.1999). No such situation is presented here.

Next, Johnson contends that the district court erred by denying his motion to compel the government to grant him transactional immunity. The district court found that there was no "meeting of the minds" between the government and Johnson and thus that there was no immunity agreement. This finding does not constitute clear error.

We similarly reject Johnson's contention that the Assistant U.S. Attorney improperly indicted him in retaliation for his refusal to accept a plea bargain. *See United States v. Garza–Juarez*, 992 F.2d 896, 906 (9th Cir.1993). Additionally, Johnson's contention that his federal prosecution violates the Department of Justice's Petite Policy, which disfavors a federal prosecution following a state prosecution based on the same underlying criminal conduct, fails because the Petite Policy is merely an internal housekeeping rule which cannot be invoked by a criminal defendant as a bar to federal prosecution. *See United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir.1979).

Johnson next challenges the jury instructions. First, Johnson contends that the district court erroneously instructed on the elements of racketeering conspiracy. A district court's racketeering conspiracy jury instruction is adequate if it requires the jury to find that the prosecution has proven beyond a reasonable doubt that the

defendant (1) was aware of the nature and scope of the enterprise; (2) agreed to conduct or participate in the conduct of the enterprise's affairs; and (3) agreed to participate in at least two predicate offenses. *See Baumer v. Pachl,* 8 F.3d 1341, 1346 (9th Cir.1993). The district court's racketeering conspiracy instruction meets this standard.

■ Johnson further contends that the district court abused its discretion by declining to include language in the jury instructions that would have served to further elaborate the concept of "closed-ended" continuity. A defendant is entitled to have a jury instructed on its theory of the case if supported by both law and facts. *See United States v. Zuniga,* 6 F.3d 569, 571–72 (9th Cir.1993). However, the trial court is not required to give a particular instruction regarding a defense theory of the case so long as the court's instructions adequately cover the subject. *See id.* Johnson's theory of the case, that his predicate acts did not extend over a substantial period of time, was adequately covered by the trial court's instruction. Similarly, the district court did not abuse its discretion by denying Johnson's requested special verdict form which elaborated upon the concept of "closed-ended" continuity.

Johnson next argues that the district court erred by sustaining the government's hearsay objections during Johnson's examination of Texas Ranger Oscar Rivera. We review for an abuse of discretion a district court's decision to exclude evidence under the hearsay rule. *See United States v. Matta–Ballesteros,* 71 F.3d 754, 767 (9th Cir.1995). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801. Here, the district court did not abuse its discretion because Johnson's questions called for Rivera to offer out of court statements for the truth of the matters asserted therein. Furthermore, Rivera's responses were not admissible pursuant to the "catch-all" hearsay exception codified in Federal Rule of Evidence 807.

Johnson next contends that the district court abused its discretion in finding that no prejudicial juror misconduct occurred. In particular, Johnson argues that a particular juror's declaration demonstrates that he was prejudiced by other jurors' discussion of his case prior to the close of trial. The district court determined that the juror's declaration did not evidence either that there was any predeliberation or that the jurors had made up their minds about Johnson's guilt prior to the close of trial. The district court did not abuse its discretion. *See United States v. Klee,* 494 F.2d 394, 396 (9th Cir.1974) (holding that trial court did not abuse its discretion in finding no prejudicial juror misconduct resulting from jurors' discussion of case amongst themselves prior to deliberations).

■ Next, Johnson contends that there was insufficient evidence to support his convictions for racketeering and racketeering conspiracy. When a defendant challenges the sufficiency of the evidence against him, we review the evidence in the light most favorable to the government and ask whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *See United States v. Pacheco–Medina,* 212 F.3d 1162, 1163 (9th Cir.2000). Trial testimony established that Johnson had been a longtime friend of Mike Beckom; spent time at Mark Crawford's staff leasing businesses; conspired with Mark Crawford and Mike Beckom to sell marijuana; participated in the kidnaping and murder of Nick Brueggen; and received a Family ring from Mark Crawford after Brueggen's murder.

The record contained sufficient evidence to convict Johnson of both racketeering and racketeering conspiracy.

█ Lastly, Johnson makes a number of challenges to his sentence. We review the district court's interpretation of the Sentencing Guidelines *de novo*. *See United States v. Aguilar–Ayala*, 120 F.3d 176, 177 (9th Cir.1997). We review the district court's application of the Sentencing Guidelines to the facts of a particular case for an abuse of discretion. *See id.* at 177–78. First, we reject Johnson's contention that he should have received a two-level reduction under U.S.S.G. § 3B1.2 for being a minor participant. A reduction for playing a minor role in the offense is justified only where a defendant is "substantially less culpable than the average participant." *United States v. Torres*, 81 F.3d 900, 902 (9th Cir.1996). Trial testimony established that Johnson personally participated in abducting Nick Brueggen, holding him captive at gunpoint, and taping up the openings in the toolbox in which Brueggen was asphyxiated. The district court properly found that Johnson did not qualify as a "minor participant" within the meaning of U.S.S.G. § 3B1.2.

█ We also reject Johnson's contention that the district court erred in denying him a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a) & (b). The commentary to § 3E1.1 provides that the "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt," except in "rare situations." U.S.S.G. § 3E1.1 (Application Note 2). One of those rare situations occurs when the defendant "goes to trial to assert and preserve issues that do not relate to factual guilt ... [such as] a challenge to the applicability of a statute to his conduct." *Id.* Johnson does not qualify because, both at trial and on appeal, Johnson denied that he was factually guilty of participating in the racketeering enterprise.

We also reject Johnson's argument that the district court erred by using U.S.S.G. § 2A1.1, the guideline for first degree murder, rather than U.S.S.G. § 2A1.2, the guideline for second degree murder, as his base offense level. The district court did not err when it concluded that Johnson's criminal conduct fell within the ambit of the federal offense of first degree murder. Johnson's contention that, assuming the applicability of U.S.S.G. § 2A1.1, the district court should have departed downward ten levels to relieve unwarranted sentencing disparity between himself and co-defendant Mike Beckom also must fail because the district court *did* depart downward ten levels in order to give Johnson the same sentence as Beckom.

## III. John Crawford

John Crawford contends that the government presented insufficient evidence to support his convictions for racketeering in violation of 18 U.S.C. § 1962(c); racketeering conspiracy in violation of 18 U.S.C. § 1962(d); conspiracy in violation of 18 U.S.C. § 371; embezzlement from an employee welfare benefit plan and aiding and abetting in violation of 18 U.S.C. §§ 664 and 2; wire fraud and aiding and abetting in violation of 18 U.S.C. §§ 1343 and 2; and money laundering and aiding and abetting in violation of 18 U.S.C. §§ 1956 and 2. When a defendant challenges the sufficiency of the evidence against him, we review the evidence in the light most favorable to the government and ask whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *See United States v.*

*Pacheco–Medina,* 212 F.3d 1162, 1163 (9th Cir.2000).

At trial, James Carroll testified that Crawford posed as an official of Viking Casualty Company and represented that Viking was a legitimate and viable business. The representations of Crawford and others led to Ararat's agreement with Viking and the delivery of insurance premium funds to Viking. Additionally, IRS Agent Kent Spjute testified that Crawford received at least $5,000 in laundered insurance premium funds. Galla McGuill testified that Crawford was a manager of Superior Staff Leasing. McGuill further testified that Mark Crawford instructed her to issue checks drawn on Superior, cash the checks at the bank, and bring the cash to John Crawford. Additionally, trial testimony indicated that the various staff leasing companies were interrelated, freely exchanging funds with one another and using funds from one company to cover the financial obligations of another company. Viewing this evidence in the light most favorable to the government, it is clear that a rational trier of fact could have found the elements of each of the above crimes beyond a reasonable doubt.

Crawford further contends that there was insufficient evidence to convict him of perjury before a grand jury. We reject this contention because the government has met its burden of proving: (1) that Crawford gave testimony to the grand jury under oath; (2) that the testimony was false; and (3) that Crawford knew that the testimony was false and material to the grand jury's investigation. *See United States v. Keys,* 133 F.3d 1282, 1285 (9th Cir.1998).

Lastly, Crawford contends that the district court erred in denying his motion to sever his trial from that of his co-defendants. We reject Crawford's contention for the same reasons that we rejected appellant Kirk Johnson's similar contention.

## IV. Frank Bochicchio

Frank Bochicchio contends that the government presented insufficient evidence to support his conviction for racketeering in violation of 18 U.S.C. § 1962(c). In particular, Bochicchio argues that the government failed to demonstrate that the Family "enterprise" was still in existence at the time that Bochicchio committed the predicate racketeering acts relating to the Family's builder's home warranty insurance scheme. Trial testimony established that "People's BHW," a corporation involved in the Family's builder's home warranty insurance scheme, continued to operate after the murder of Nick Brueggen and after the arrest of Mark Crawford. Bochicchio used People's BHW to facilitate the builder's home warranty insurance scheme. People's BHW also engaged in some legal activities such as real estate investment and property management. This evidence is sufficient to demonstrate that the Family organization continued to exist after the death of Brueggen and the arrest of Crawford. *See Chang v. Chen,* 80 F.3d 1293, 1300 (9th Cir.1996); *United States v. Feldman,* 853 F.2d 648, 660 (9th Cir.1988); *Pharmacare v. Caremark,* 965 F.Supp. 1411, 1423 (D.Haw.1996).

AFFIRMED.