**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Lionel McCOY, aka Jock, Defendant—**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Kevin Lee Davis, aka Slow aka Yellow**
**Dude, Defendant—Appellant.**

No. 01–10539, 01–10596.
D.C. No. CR–98–40082–DLJ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 1, 2003.

Decided Jan. 8, 2004.

Nina Goodman, Esq., United States Department of Justice, Washington, DC, for Plaintiff–Appellee.

Nina Wilder, Esq., Weinberg & Wilder, San Francisco, CA, Karen L. Landau, Esq., Oakland, CA, for Defendant–Appellant.

Before SCHROEDER, Chief Judge, D.W. NELSON, and RYMER, Circuit Judges.

## MEMORANDUM *

Codefendants Kevin Davis and Lionel McCoy appeal their convictions and sen-

---

* This disposition is not appropriate for publica-   tion and may not be cited to or by the courts

tences for drug conspiracy charges. The facts are known to the parties, therefore we shall not repeat them here except as needed for our analysis. We affirm the district court on all counts except the concurrent life sentences imposed on Davis for Counts 2 and 3, which we vacate.

### 1. McCoy's Motion to Sever

■ We find that the district court did not err by refusing to grant McCoy's motion to sever. *See United States v. Golb,* 69 F.3d 1417, 1426 (9th Cir.1995). The evidence was sufficiently compartmentalized, given the fact that McCoy and Davis were co-conspirators. "[E]vidence relating to other incidents in which [McCoy] was not involved was relevant to his case because it showed the nature of the scheme and how it was carried out." *United States v. Vaccaro,* 816 F.2d 443, 449 (9th Cir.1987), *abrogated on other grounds by Huddleston v. United States,* 485 U.S. 681, 685 n. 2, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Furthermore, the government separated much of the testimony relating to each of the two conspiracies.

While the judge's limiting instructions could have been more thorough, they did not amount to an abuse of discretion. He instructed the jury both at the beginning and end of the trial that they must consider the evidence separately against each separate defendant. He gave this limiting instruction an additional time during the trial, after the inflammatory testimony of one witness, who testified to violent acts committed by Davis that were unrelated to the charges against McCoy. "Judicial economy justifies reliance on the jury to follow the instructions of the court that segregate the evidence and limit the applicability of the evidence to each defendant." *Id.* at 448.

### 2. Sufficiency of the Evidence of McCoy's Conspiracy Charge

■ We find that there was sufficient evidence to convict McCoy as a knowing participant in the interstate conspiracy. *See United States v. Abushi,* 682 F.2d 1289, 1293 (9th Cir.1982). Although the bulk of the evidence against McCoy involved a single drug transaction, this transaction used the same methodology and personnel as the interstate conspiracy. McCoy used the same courier, and the same system of pager messages, pay phone calls, and hotel rooms as was used in the other interstate transactions.

In addition, the government presented several phone conversations between Davis and McCoy in the months preceding the transaction. While not directly related to the interstate conspiracy, these conversations demonstrated that McCoy had a sufficient number of interactions with Davis to be aware of the overall range of Davis's activities. Thus, the government made a credible argument that McCoy knew or should have known of the overall scheme, even if he was involved in only a limited part of it. *See United States v. Antonakeas,* 255 F.3d 714, 723 (9th Cir.2001).

### 3. Agent Delaney's Expert Testimony

■ We find that the district court did not abuse its discretion in admitting Delaney's expert testimony under Federal Rule of Evidence 702. While the code system employed by the defendants was not highly complex, it did require specialized knowledge related to the participants and the types of transactions involved in order to make sense of the thousands of pager messages exchanged. Given the voluminous numerical evidence that was at the heart of the government's case, it is diffi-

of this circuit except as provided by Ninth Circuit Rule 36–3.

cult to envision how the trial could have proceeded without Delaney's guidance.

Defendants' reliance on *United States v. Hermanek*, 289 F.3d 1076 (9th Cir.2002), is misplaced. Delaney's methodology was based on concrete information and linked to specific transactions, and therefore does not raise the same danger of unsubstantiated inferences as the interpretations that the Ninth Circuit panel found inadmissible in *Hermanek*. In fact, the *Hermanek* panel found quite similar interpretations of numeric codes, which converted numbers to quantities and prices of cocaine, to pose no admissibility problem. *Id.* at 1097.

We also find that Delaney's testimony did not violate Federal Rule of Evidence 704(b). The vast majority of Delaney's testimony consisted of translating individual numeric sequences to indicate cocaine prices and quantities, identification codes, times, and phone numbers. These interpretations do not raise any 704(b) problem, because accepting the translation does not compel the ultimate conclusion of guilt. *See United States v. Morales*, 108 F.3d 1031, 1037–1038 (9th Cir.1997); *United States v. Plunk*, 153 F.3d 1011, 1018 (9th Cir.), *amended by* 161 F.3d 1195 (9th Cir. 1998), *abrogation on other grounds recognized by U.S. v. Hankey*, 203 F.3d 1160, 1169 n. 7 (9th Cir.2000).

### 4. Denial of a Franks Hearing to Determine the Necessity of the Wiretap

■ The defendants have not proven that the government's affidavit contained intentionally or recklessly false statements. The affidavit is over 60 pages long, and it thoroughly discusses the government's significant investigatory efforts and the specific reasons why their investigation could not proceed without the wiretap. Accordingly, the defendants have not demonstrated that they are entitled to a *Franks* hearing. *See United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir.1995).

### 5. The Witness's Invocation of the 5th Amendment Privilege against Self–Incrimination on the Stand

■ The facts here do not constitute a "conscious and flagrant" attempt by the government to build its case on a witness's invocation of the Fifth Amendment privilege. *See Namet v. United States*, 373 U.S. 179, 186, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963). It was not an abuse of discretion for the trial judge to find that the prosecution did not know that the witness planned to invoke the Fifth before she took the stand. And, even if the prosecution did know prior to the witness taking the stand that she planned to invoke the Fifth, this prior knowledge alone does not require a finding of prosecutorial misconduct. *See Cota v. Eyman*, 453 F.2d 691, 694–95 (9th Cir.1971). Furthermore, the defendants do not point to any portions in the trial transcript in which the prosecution attempted to build its case on references to the witness's refusal to testify. Therefore, there was not sufficient evidence to support a finding of prosecutorial misconduct. *See Skinner v. Cardwell*, 564 F.2d 1381, 1390 (9th Cir.1977).

The prejudicial impact of the witness's testimony was not of such critical weight to the prosecution's case to warrant a mistrial. *See Namet*, 373 U.S. at 187, 83 S.Ct. 1151. There were numerous other witnesses who testified to Davis's intimidation. Furthermore, any prejudicial impact of her appearance on the stand was adequately addressed by the district judge's limiting instruction to the jury, which admonished them from considering anything said or done by the witness as evidence.

#### 6.    Bruton *error*

■ In *United States v. Angwin,* 271 F.3d 786 (9th Cir.2001), the Ninth Circuit held that, "[u]nder *Bruton* and its progeny, the admission of a statement made by a non-testifying codefendant violates the Confrontation Clause when that statement *facially, expressly, clearly, or powerfully* implicates the defendant." *Id.* at 796 (emphasis added). Applying this standard to the redacted statement in this case, we find one portion of the statement meets *Angwin*'s standard by facially, expressly, clearly, and powerfully implicating Davis. In response to a question about what code the witness dialed into her pager on the day her car was stopped by a police officer, she responded, "Eighty four, four thirty, eighty four, four thirty." At the time this statement was read to the jury, Delaney had already testified that 84 was a code for Kevin Davis. The prosecutor also argued in her closing argument that 84 was an identifying code for Davis. This testimony clearly implicated Davis. *See United States v. Gillam,* 167 F.3d 1273, 1277 (9th Cir.1999); *United States v. Peterson,* 140 F.3d 819, 822 (1998).

■ Once a *Bruton* error is identified, the burden then shifts to the prosecution to prove that it was harmless error. *Gillam,* 167 F.3d at 1277. Here, the government convincingly argues that any prejudicial impact of the witness's statement was harmless in light of the overwhelming evidence, including Davis's own statements in intercepted telephone conversations, that established his involvement in the events described in her confession. Accordingly, although there was a *Bruton* error, it was harmless and no mistrial is warranted on this ground.

#### 7.    *Prosecutorial Misconduct in the Opening Statement*

■ The prosecutor provided the court with full information as to the nature of her opening statement and her reasons for seeking to present it to the jury. She then received express permission from the district court to present the disputed evidence in her opening statement. It was not her responsibility to conduct a Rule 403 balancing test separate from that of the district court. There is no indication of bad faith on the part of the prosecution.

Furthermore, although the opening statement did contain highly inflammatory material, the judge and the prosecution both gave the jury limiting instructions that "an opening statement is neither evidence nor argument," the prosecutor did not reiterate the prejudicial statements, and the government's case was strong. This suggests that, even if the statements were prejudicial, there were sufficient countervailing factors to lessen their impact and remove the need for a mistrial. *See United States v. Jones,* 592 F.2d 1038, 1044 (9th Cir.1979); *United States v. Taren–Palma,* 997 F.2d 525, 532 (9th Cir. 1993), *abrogated on other grounds by United States v. Shabani,* 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

#### 8.    *Concurrent Life Sentences*

The government concedes that under *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), Davis's convictions and sentences for Counts 2 and 3 must be vacated. These counts were for conspiracy to distribute drugs in violation of 21 U.S.C. § 846, which under *Rutledge* are lesser included offenses of Count 1, the continuing criminal enterprise charge. *See id.* at 300, 307, 116 S.Ct. 1241.

Accordingly, we VACATE Davis's convictions and sentences for Counts 2 and 3 and remand to the district court for resentencing.

AFFIRMED in part and VACATED and REMANDED in part.