**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Velton ROGERS, Defendant–Appellant.**

**No. 02–10112.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 2003.

Filed March 14, 2003.

Paul J. Andre, Quinn, Emanuel, Urquhart, Oliver & Hedges, Redwood Shores, CA, for the defendant-appellant.

James P. Arguelles, Assistant United States Attorney, Sacramento, CA, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, NOONAN and CLIFTON, Circuit Judges.

SCHROEDER, Chief Judge.

This a relatively straightforward appeal from a conviction of one count of mail fraud in violation of 18 U.S.C. § 1341 and five counts of money laundering in violation of 18 U.S.C. § 1957. The appeal principally concerns routine challenges to the admissibility and sufficiency of the evidence, but raises one issue of first impression in this Circuit. That issue involves the relationship between the mail fraud conviction and the money laundering convictions that rest on the basis of subsequent activity.

The convictions in this case arise out of a large scale Ponzi scheme, IFR Trust ("IFR"). IFR's investors were recruited for what they were told was a high-yield investment program, but was in fact a fraudulent scheme. Defendant Velton Rogers acted as a referral agent for the so-called IFR Trust, receiving a commission of 5 percent of all investor funds he brought into the program. The money Rogers took in from investors and deposited was either withdrawn by Rogers in the form of cashier's checks and cash, paid to other investors to further the scheme, or transferred to another company operated by IFR's creator, Larry Wilcoxson.

Although the defendant went to trial on two counts of mail fraud, he was convicted on only one count that related to the mail-

ing of a cashier's check for $5,000. The money laundering counts related to the shuffling between accounts of much larger amounts of funds coming from the overall contributions to the Ponzi scheme.

## I. Relationship Between Mail Fraud & Money Laundering Convictions

■ A conviction for money laundering under 18 U.S.C. § 1957 requires the government to show: (1) the defendant knowingly engaged in a monetary transaction; (2) he knew the transaction involved criminal property; (3) the property's value exceeded $10,000; and (4) the property was derived from a specified unlawful activity. *See United States v. Messer*, 197 F.3d 330, 341 (9th Cir.1999). Mail fraud is included as such a "specified unlawful activity." *See* 18 U.S.C. § 1957(f)(3); 18 U.S.C. § 1956(c)(7)(A); 18 U.S.C. § 1961(1). The elements of mail fraud under 18 U.S.C. § 1341 are: (1) proof of a scheme to defraud; (2) using or causing the use of the mails to further the fraudulent scheme; and (3) specific intent to defraud. *See United States v. Munoz*, 233 F.3d 1117, 1129 (9th Cir.2000). The two offenses, money laundering and mail fraud, are separate and distinct.

■ Rogers argues that because he was convicted of only one count of mail fraud involving a $5,000 cashier's check, he could not have been convicted of money laundering in excess of the requisite statutory floor of $10,000. It is apparent from the record, however, that Rogers was laundering the proceeds of the larger operation, which bilked hundreds of people out of hundreds of thousands of dollars. It is therefore clear to us that regardless of how much money Rogers personally, fraudulently solicited to form the basis of the mail fraud conviction, Rogers' conduct in laundering the money brought in by the entire Ponzi scheme is the relevant stan-

dard for determining if the elements of the money laundering statute have been met. They clearly were.

■ While this is an issue of first impression in this circuit, it has been raised in three of our sister circuits and they have reached the identical conclusion. In *United States v. Massey*, 48 F.3d 1560, 1566 (10th Cir.1995), the Tenth Circuit rejected the defendant's argument that "scheme or artifice to defraud" in 18 U.S.C. § 1341 is limited to each individual, defrauded client. The court wrote, "To the contrary, 'scheme to defraud' has a wider meaning than an individual act of fraud. A scheme refers to the overall design to defraud one or many by means of a common plan or technique." *Id.* at 1566. *See also United States v. Morelli*, 169 F.3d 798, 806–07 (3d Cir.1999) ("We think the money was the proceeds of the entire ongoing fraudulent venture ... and that this venture was a wire fraud scheme."); *United States v. Tencer*, 107 F.3d 1120, 1131 (5th Cir.1997) ("Because the money laundering counts do not define 'specified unlawful activity' in terms of the mail fraud activities described in counts 2–18, this court is not limited to considering only those activities.").

## II. Evidentiary Challenges

■ Rogers argues that the district court erred by admitting into evidence an affidavit that included a portion of the criminal complaint filed against IFR's organizer, Larry Wilcoxson. We disagree. The district court admitted the complaint to show that once Rogers received a copy of it, he was aware that IFR may be a fraudulent scheme. This is a proper purpose and the complaint is not hearsay. *See United States v. Kenney*, 911 F.2d 315, 319 (9th Cir.1990). Additionally, the district court gave a limiting instruction to the jury to address any potential prejudice

from the admission of the complaint, which the jury is presumed to have followed. *See United States v. Nelson*, 137 F.3d 1094, 1106 (9th Cir.1998). Thus, the district court did not err by admitting the Wilcoxson complaint.

### III. Sufficiency Of The Evidence

Rogers also challenges the sufficiency of the evidence establishing that he possessed the intent to defraud, which is required to support the mail fraud conviction, or the actual knowledge that funds were criminally derived, required to support the money laundering convictions. The record contains sufficient evidence, however, to support Rogers' convictions on all counts.

■■ It is settled law that intent to defraud may be established by circumstantial evidence. *See, e.g., United States v. Plache*, 913 F.2d 1375, 1381 (9th Cir.1990). The jury may infer intent from the inconsistent claims Rogers made regarding the returns investors could expect on their investments, as well as his inconsistent statements about where the money was being invested. *See United States v. Lothian*, 976 F.2d 1257, 1267–68 (9th Cir.1992) (inferring intent to defraud from misrepresentations). The jury may also infer intent to defraud from Rogers' conduct after the FBI shut IFR down in August 1999. Rogers' misrepresentations in responding to investor inquiries and failure to disclose the status of IFR supports an inference of intent to defraud. *See Munoz*, 233 F.3d at 1133.

■ The government produced sufficient evidence for a jury to infer that Rogers knew IFR was fraudulent. Thus, a reasonable juror could also conclude that he possessed the requisite knowledge that the money in the transactions was derived from mail and wire fraud to support the money laundering convictions. *See United*

*States v. Sayakhom*, 186 F.3d 928, 941, 943 (9th Cir.1999) (affirming convictions of mail fraud and money laundering).

### IV. Money Laundering Instruction

■ Rogers argues that the money laundering jury instruction is erroneous because it allowed the jury to convict if it found any portion of the money involved in the transaction was criminally derived, rather than requiring the jury to find $10,000 to be criminally derived as 18 U.S.C. § 1957 mandates. The defendant did not object to the instruction below. Therefore, to prevail on appeal, he must show: (1) the instruction was in error; (2) the error was plain; and (3) the error affected substantial rights. *See United States v. Turman*, 122 F.3d 1167, 1169–70 (9th Cir.1997). Any confusion caused by the instruction here does not rise to the level of plain error. The instruction tracks the language in case law setting out the elements required for a money laundering conviction. *See Messer*, 197 F.3d at 341. Further, all of the charged transactions were for amounts greater than $10,000. There was no plain error.

### V. Ineffective Assistance Of Counsel

■ Rogers argues that his counsel at trial was ineffective because he failed to develop sufficiently a "good faith" defense and failed to object to a jury instruction, among other things. This claim of ineffective assistance of counsel is inappropriate on direct appeal. *See United States v. Ross*, 206 F.3d 896, 900 (9th Cir.2000). The record is not sufficiently developed to allow review, and the legal representation was not so inadequate that it clearly denied Rogers his Sixth Amendment right to counsel. *See id.* Rogers' ineffective assistance of counsel claim is more appropriately considered in a collateral proceeding.

## VI. Sentencing

The district court did not err by increasing Rogers' offense level by two levels for obstruction of justice pursuant to USSG § 3C1.1. To support this enhancement, the district court must find that Rogers (1) gave false testimony; (2) on a material matter; (3) with willful intent. *United States v. Robinson,* 63 F.3d 889, 892 (9th Cir.1995). The record supports the district court's finding that Rogers was misleading in his testimony about whether he personally pitched IFR to investors and the representations he made about what he was doing with the money. Although Rogers stated that he did not solicit investors and never gave an investment pitch, investors gave testimony to the contrary. The record also supports the district court's finding that Rogers misrepresented what he was doing with the money the investors gave him. Different investors testified as to the various stories Rogers told them about where the money was being sent. Rogers denied making any of these statements. Given the testimony of several witnesses regarding these facts, the district court's finding that Rogers obstructed justice was not clearly erroneous. *See United States v. Dunnigan,* 507 U.S. 87, 95–96, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (concluding there was "ample support" for the district court's finding given contradicting testimony by numerous witnesses).

The district court also did not err in enhancing Rogers' sentence ten levels pursuant to USSG § 2F1.1 for an amount of loss greater than $500,000 resulting from the fraud offense. USSG § 2F1.1 required the district court to consider the entire loss caused by the fraudulent scheme, and the loss is not limited by the counts of conviction. USSG § 2F1.1 cmt. n. 7 (2000); *United States v. Fine,* 975 F.2d 596, 599 (9th Cir.1992) (en banc).

The record shows that Rogers took in $1.6 million in total from investors. Thus, the ten-level enhancement was proper.

Finally, the district court increased Rogers' offense level by two levels pursuant to USSG § 2S1.2(b)(1)(B) (2000) because it found that he had specific knowledge that the funds involved in money laundering were the proceeds of an unlawful activity. There was sufficient evidence for the jury to infer Rogers' knowledge that the laundered funds were proceeds from mail and wire fraud. Thus, it was not clearly erroneous for the district court to find at sentencing that Rogers had knowledge of unlawful money laundering.

AFFIRMED.