**UNITED STATES of America,**
**Plaintiff,**

v.

**Stephen YAGMAN, Defendant.**

**No. CR 06–227(A)–SVW.**

United States District Court,
C.D. California.

Aug. 17, 2007.

Barry Tarlow, Mark O. Heaney, Mi Kim, Tarlow & Berk PC, Los Angeles, for defendant.

George Cardona, Acting U.S. Atty., Alka Khosla Sagar, Asst. U.S. Atty., Beong–Soo Kim, Asst. U.S. Atty., Los Angeles, for plaintiff.

ORDER GRANTING–IN–PART AND DENYING–IN–PART DEFENDANT'S MOTION FOR ACQUITTAL [407]

STEPHEN V. WILSON, District Judge.

## I. INTRODUCTION

Defendant Stephen Yagman ("Defendant" or "Yagman") moved for judgment of acquittal on counts nine, ten, eleven, thirteen, fourteen, seventeen, and eighteen of the First Superseding Indictment. These counts charge Defendant with engaging in monetary transactions in criminally derived property in violation of 18 U.S.C. § 1957.

The Court issued an Order requiring further briefing on July 30, 2007. (Order Re Further Briefing, July 30, 2007). The parties filed supplemental briefs on August 8, 2007.

## II. ANALYSIS

Defendant argues that the evidence presented at trial does not establish beyond a reasonable doubt that the monetary transactions at issue in counts nine, ten, eleven, thirteen, fourteen, seventeen, and eighteen involved over $10,000 in criminally derived property.

### A. Standard for a Motion for Acquittal

Federal Rule of Criminal Procedure 29(c)(1) provides that "[a] defendant may move for a judgment of acquittal, or renew such motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later, or within any other time the court sets during the 7–day period." Further, Rule 29(c)(2) provides that "[i]f the jury has entered a guilty verdict, the court may set aside the verdict and enter an acquittal."

 A judgment of acquittal is proper under Rule 29(c) when no rational factfinder could find, beyond a reasonable doubt, against the defendant. *United States v. Gil,* 58 F.3d 1414, 1423 (9th Cir. 1995)("When the sufficiency of evidence is challenged, this Court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."); *Rhoden v. Rowland,* 10 F.3d 1457, 1461 (9th Cir.1993) ("In reviewing a sufficiency of the evidence challenge, we must decide 'whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' ") (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *United States v. Mundi*, 892 F.2d 817, 820–21 (9th Cir.1989) ("We review the denial of the Rule 29 motions and [defendant's] challenge to the sufficiency of the evidence under the same standard, assessing whether, when viewed in the light most favorable to the government, the evidence adduced at trial was sufficient for a rational jury to find [the defendant] guilty beyond a reasonable doubt."). "In making this assessment, the reviewing court should not substitute its own inferences for those of the jury." *United States v. Diggs*, 649 F.2d 731, 735 (9th Cir.1981), cert. denied, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981), *overruled on other grounds by United States v. McConney*, 728 F.2d 1195 (9th Cir.1984) (citations omitted).

### B. The Tracing Requirement

■■■■ "A conviction for money laundering under 18 U.S.C. § 1957 requires the government to show: (1) the defendant knowingly engaged in a monetary transaction; (2) he knew the transaction involved criminal property; (3) the property's value exceeded $10,000; and (4) the property was derived from a specified unlawful activity." *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir.2003). Where the transaction involves criminal proceeds that have been commingled with innocent funds, the Ninth Circuit imposes a tracing requirement; the government must trace each of the alleged monetary transactions to criminally-derived proceeds. *United States v. Rutgard*, 116 F.3d 1270, 1292 (9th

Cir.1997); *United States v. Hanley*, 190 F.3d 1017, 1024 (9th Cir.1999).

■■■ With respect to a withdrawal,[1] three potential methods of satisfying the tracing requirement exist other than tracing the funds. *Hanley*, 190 F.3d at 1025 (citing *Rutgard*, 116 F.3d at 1292). First, "the government may prevail by showing that all the funds in the account are the proceeds of crime." *Rutgard*, 116 F.3d at 1292 (citing *United States v. Savage*, 67 F.3d 1435, 1440–43 (9th Cir.1995)). Second, the government may prevail if the Defendant "transferred out of the account all the funds that were in it." 116 F.3d at 1292. Finally, in some circuits the government may prevail based on a rule or presumption that "once criminally-derived funds were deposited, any transfer from the account would be presumed to involve them for the purpose of applying § 1957." *Id.* While other Circuits have adopted such a presumption, *see United States v. Haddad*, 462 F.3d 783, 792 (7th Cir.2006); *United States v. Davis*, 226 F.3d 346 (5th Cir.2000); *United States v. Sokolow*, 91 F.3d 396, 409 (3d Cir.1996); *United States v. Moore*, 27 F.3d 969, 976–77 (4th Cir. 1994); *United States v. Johnson*, 971 F.2d 562 (10th Cir.1992), the Ninth Circuit has expressly rejected its adoption. 116 F.3d at 1292–93 (explaining that "[t]he statute does not create a presumption that any transfer of cash in an account tainted by the presence of a small amount of fraudulent proceeds must be a transfer of these proceeds ... and [t]o create such a presumption in order to sustain a conviction under § 1957 would be to multiply many times the power of that draconian law.")

For example, in *Rutgard*, the defendant was charged with transferring $7.5 million

---

1. With respect to a deposit, the tracing requirement is satisfied so long as the transaction involved a deposit of at least $10,000 of criminally-derived proceeds. *Rutgard*, 116 F.3d at 1292. The presence of innocent funds in the account, or the later deposit of innocent funds, "cannot wipe out the crime committed by the deposit of the criminally-derived proceeds." *Id.*

from his bank account. 116 F.3d at 1290. The Court determined that the bank account had only contained $46,000 in criminally-derived funds which were commingled with innocent funds. *Id.* The Court observed that more than $46,000 remained in the account after the transaction. *Id.* at 1293. Therefore, the Ninth Circuit held that the government failed to prove beyond a reasonable doubt that the transfer necessarily included more than $10,000 in criminally-derived funds. *Id.* at 1291–93. *See also Hanley,* 190 F.3d at 1025–26 (rejecting government's argument that tracing requirement was satisfied where the government had proven that the great majority of the funds in the account were criminally derived funds.)

### C. The Monetary Transactions at Issue

Defendant argues that the government failed to trace at least $10,000 in criminally-derived property to the monetary transactions charged in counts nine, ten, eleven, thirteen, fourteen, seventeen, and eighteen. The government contends that the funds charged in these counts can be traced to proceeds of a violation of 18 U.S.C. § 152(1) and (2).

### 1. Count Nine

Count nine charges the deposit of check number 1389 in the amount of $20,000, drawn on the Yagman & Yagman & Reichman Los Angeles firm account and deposited into the K.D. Mattox account on July 21, 2000. The government contends that these funds represent the proceeds of the $150,000 attorneys' fees received from the *Scott* case.

Prior to the deposit of the $150,000 check for attorneys' fees in the *Scott* case into the Los Angeles firm account, the firm account had a balance of $17,056.44. Subsequent to the deposit of the $150,000, but prior to the processing of the $20,000 check, a check for $50,209.39 was processed from the Los Angeles firm account. Thus, the relevant sequence of events proceeded as follows:

| DATE | TRANSACTION | ACCOUNT BALANCE | POTENTIAL AMOUNT OF INNOCENT FUNDS |
|------|-------------|-----------------|------------------------------------|
| ??? | | $ 17,056.44 | $17,056.44 |
| ??? | Deposit of $150,000 for attorneys' fees in Scott case | $167,056.44 | $17,056.44 |
| ??? to July 21 | Various withdrawals totaling $9,439.39 [2] | $157,617.05 | $17,056.44 |
| July 21 | $50,209.39 check is written from the account and processed [3] | $107,407.66 | $17,056.44 |
| July 21 | $20,000 check is written from the account | | |

**2.** Neither party mentions these withdrawals. However, the record shows that the account balance was $167,056.44 on the day the *Scott* check was deposited and $107,407.66 on July 21. Because there were no deposits during this time period, there were necessarily withdrawals totaling $9,439.39 during this period. As below, the Court cannot simply presume that innocent funds were withdrawn during this period rather than tainted funds. Therefore, $17,056.44 in innocent funds potentially remained in the account after these withdrawals.

**3.** Although the $20,000 and $50,209.39 checks were written on the same day, the processing numbers indicate that the $50,209.39 check was processed first.

Defendant argues that it is impossible to determine whether the $20,000 check contained at least $10,000 of the *Scott* proceeds. For example, it is possible that the check consisted of $17,000 in innocent funds and $3,000 in criminally-derived funds. Because the Court cannot presume that check contained criminally derived proceeds even if the great majority of funds in the account were criminally-derived funds, *see Hanley*, 190 F.3d at 1025–26, Defendant argues that the evidence presented at trial does not establish beyond a reasonable doubt that the monetary transactions at issue in counts nine involved criminally derived proceeds.

Although the Ninth Circuit has rejected the adoption of any presumption that specific funds used in a transaction consist of criminally-derived funds, the government assumes without explanation that the $50,209.39 check consisted of all of the $17,056.44 of untainted funds. Thus, the government concludes that only criminally-derived funds remained in the account at the time the $20,000 check was processed.

■ The government's conclusion is not logically permitted by the evidence. While it is possible that the $50,209.39 check consisted of all of the untainted funds, it is also possible that the check consisted of solely criminally-derived funds. Thus, no rational fact-finder could determine beyond mere speculation whether the check contained tainted or untainted funds. Because the earlier transaction did not necessarily involve untainted funds, the government's conclusion is possible only if the court were to adopt a presumption that earlier transactions necessarily exhaust untainted funds before tainted funds are withdrawn.

The government is correct in noting that neither *Rutgard* nor *Hanley* directly addresses whether withdrawals from an account, following the deposit of tainted funds, reduces the balance of tainted funds or untainted innocent funds. However, the Court finds that the government's reading of *Rutgard* and *Hanley* as prohibiting a presumption of taint but permitting a presumption of lack of taint is contrary to a plain reading of the cases. *Rutgard* and *Hanley* clearly establish that a court may not employ any presumption in determining the source of a specific transaction. The Court sees no distinction between presuming that a withdrawal contained tainted funds and presuming that a earlier withdrawal contained untainted funds.[4] In both circumstances there are no indicia (in the absence of tracing) to suggest whether the transaction involved tainted or untainted funds, and both situations implicate the same concerns which motivated the Ninth Circuit's refusal to adopt a presumption. *See Rutgard*, 116 F.3d at 1293. Finally, the government has failed to cite a single case in support of their presumption that the earlier transaction necessarily involved untainted funds rather than tainted funds.

Absent a presumption, no rational fact-finder could determine whether the transaction involved criminally-derived proceeds or innocent funds. Therefore, the Court finds that the evidence presented at trial does not establish beyond a reasonable doubt that the monetary transactions at issue in count nine involved at least $10,000 in criminally derived proceeds.

### 2. Count Ten

■ Count ten charges the withdrawal of funds in the account held in the name of K.D. Mattox at U.S. Bank by check number 2072 in the amount of $12,000,

---

**4.** By presuming that the earlier withdrawal consisted of innocent funds, the Government is effectively presuming that the later transaction consisted of criminally-derived funds.

made payable to W.G. Childs on July 21, 2000. Defendant argues that it is impossible to determine whether the $12,000 check contained at least $10,000 in criminally-derived proceeds. The following chart details the banking activity in the K.D. Mattox account for the time period in question:

| DATE | TRANSACTION | ACCOUNT BALANCE | POTENTIAL AMOUNT OF INNOCENT FUNDS |
|------|-------------|-----------------|------------------------------------|
| June 20 | | $22,706.31 | $22,706.31 |
| June 21 | Deposit of $15,000 of criminally-derived proceeds | $37,706.31 | $22,706.31 |
| June 21 to July 18 | Various withdrawals totaling $22,025.94 [5] | $15,680.37 | $15,680.37 |
| July 18 to July 21 | Various withdrawals totaling $3629.91 [6] | $12,050.46 | $12,050.46 |
| July 21 | Deposit of $20,000 and $5655.85 of criminally-derived proceeds | $37,706.31 | $12,050.46 |
| July 21 | $12,000 check is written from the account | | |

As illustrated above, there were potentially $12,050.46 in innocent funds in the K.D. Mattox account at the time the $12,000 check was written. Because the Court cannot simply presume that this check consisted of criminally-derived funds, the government has failed to prove beyond a reasonable doubt that the monetary transactions at issue in count nine involved at least $10,000 in criminally derived proceeds.

### 3. Count Eleven

Count eleven charges the deposit of check number 1817 in the amount of $82,561.61, drawn on the Los Angeles firm account at U.S. Bank, into the account held in the name of K.D. Mattox on June 18, 2001. Defendant argues that it is impossible to determine whether the $82,561.61 check contained at least $10,000 in criminally-derived proceeds. As the Court observed in its previous order requiring further briefing on Defendant's motion for acquittal, "the determinative factor in the analysis of this transaction is whether a $30,000 deposit from the K.D. Mattox Schwab account consisted of criminally-derived funds." (Order Re Further Briefing, July 30, 2007, at 10.)

◼ Based on an analysis of the K.D. Mattox Schwab account, the Court finds

---

**5.** Neither party mentions these withdrawals. However, the record shows that the account balance was $22,706.31 on June 20, and $15,680.37 on July 18. Because the only deposit during this period was the $15,000 deposit on June 21, there were necessarily withdrawals totaling $22,025.94 during this period. As discussed above, the Court cannot simply presume that innocent funds were withdrawn during this period rather than tainted funds. Therefore, $15,680.37 in innocent funds potentially remained in the account after these withdrawals.

**6.** Again, neither party discusses these withdrawals. However, the record show that the account balance was $15,680.37 on July 18 and $37,706.31 on July 21. Because the only deposits during this period were the $20,000 and $5655.85 deposits on July 21, there were necessarily withdrawals totaling $3,629.91 during this period. Because all of the funds in the account on July 18 were potentially untainted, the withdrawal of $3,629.91 necessarily reduces the potential amount of innocent funds to $12,050.46.

that there were sufficient potentially innocent funds in the Schwab account to fund the $30,000 deposit with entirely innocent funds. *See* (Govt's Exhs. 452A and 452B). Therefore, the Court finds that the $30,000 deposit must be characterized as potentially innocent funds. The Government also concedes that if the Court's interpretation of *Rutgard* is applied, the $30,000 deposit must be characterized as potentially innocent funds. (Govt.'s Supp. Brief at 9.)

■ As the Court detailed in its previous order, the account potentially contained $88,865.01 in untainted funds at the time the $82,561.61 check was written if the $30,000 check consisted of tainted funds. (Order re Further Briefing, July 30, 2007 at 11–13); *see also* (Govt. s Exh. 456A) (showing that $88,865.11 in potentially innocent funds remained in the account at the time the $82,561.61 check was written). Consequently, no rational factfinder could conclude that the $82,561.61 check necessarily consisted of more than

$10,000 in criminally-derived funds. The Government concedes that the above analysis, under the Court's interpretation of *Rutgard,* reveals that Count 11 should be dismissed. (Govt.'s Supp. Brief at 12)

### 4. Counts Thirteen and Fourteen

■ Count thirteen charges the deposit of check number 1987 in the amount of $25,000, drawn on the Los Angeles firm account at U.S. Bank, into the account of K.D. Mattox at Network Bank on October 12, 2001. Count fourteen charges the deposit of check number 1963 in the amount of $25,000, drawn on the Los Angeles firm account at U.S. Bank into the account held in the name of KD Mattox at U.S. Bank. The government claims that these checks represented the proceeds from the attorneys' fees in the *Children Who Want an Education* case. The following chart details the banking activity in the Los Angeles firm account at U.S. Bank for the time period in question:

| DATE | TRANSACTION | ACCOUNT BALANCE | POTENTIAL AMOUNT OF INNOCENT FUNDS |
|------|-------------|-----------------|-------------------------------------|
| 9/25 | | $19,047.54 | $19,047.54 |
| 9/27 | Deposit of $150,202.64 in criminally-derived proceeds from attorneys' fees in Children Who Want an Education | $169,250.18 | $19,047.54 |
| 9/27–10/12 | Various withdrawals totaling $33,720.75 | $135,529.43 | $19,047.54 |
| 10/12 | Withdrawal of $27,000 | $108,529.43 | $19,047.54 |
| 10/12 | Check no.1987 for $25,000 is written from the account | | |
| 10/12 | Check no.1963 for $25,000 is written from the account | | |

As the chart illustrates, there were potentially $19,047.54 in innocent funds in the account at the time the $25,000 checks were written. As Defendant recognizes, one of the two checks must have necessarily contained more than $10,000 in criminally-derived funds. (Def.'s Mot. at 9.) However, there is no means for a rational factfinder to decide beyond a reasonable doubt which check contained the criminally-derived funds because it is equally likely that either of the checks contained at least $15,001.00 in untainted funds. Therefore, the government has failed to prove beyond

a reasonable doubt that the monetary transactions at issue in counts thirteen or fourteen involved at least $10,000 in criminally derived proceeds.[7]

### 5. Counts Seventeen and Eighteen

Count seventeen charges the deposit of check number 115 in the amount of $100,000 drawn on the account held in the name of KD Mattox at Charles Schwab, into Defendant's retirement account at Charles Schwab. Count eighteen charges the deposit of check number 117 in the amount of $62,000, drawn on the account held in the name of KD Mattox at Charles Schwab into the Los Angeles firm account at U.S. Bank on April 22, 2002. The government contends that the funds in the KD Mattox Schwab account were criminally-derived proceeds because the funds represented amounts received from Defendant's relatives that were concealed in the bankruptcy petition.

■■■ The amount of potentially innocent funds in the K.D. Mattox Schwab account at the time of these withdrawals depends on whether the initial opening deposits of $25,000.00 is considered criminally-derived or potentially innocent. According to Defendant's own testimony at trial, the opening deposit of $25,000 into the account represented the transfer of his relatives' funds rather than any transfer of pre-existing funds in the account. (Govt.'s Supp. Brief at 5.) Therefore, viewing the evidence in the light most favorable to the Government, there was sufficient evidence at trial for a jury to find beyond a reason-

---

7. The government argues that these transactions are distinguishable from the transaction in *Rutgard* and therefore the Court is free to apply the presumptions adopted by other Circuits. (Govt.'s Opp. at 8–9.) Specifically, in *Rutgard* the account balance after the transaction at issue exceeded the amount of tainted funds. Thus, in *Rutgard* it was possible that none of the tainted funds had been used in the transaction at issue. In contrast, in these transactions the account balance after the transactions at issue was less than the amount of tainted funds. Thus, in this case some of the tainted funds were necessarily involved in the transactions at issue. Under these circumstances, the government argues that the Court should presume that the transaction involved at least $10,000 in tainted funds. *United States v. Davis*, 226 F.3d 346, 357 (5th Cir.2000) ("[W]hen the aggregate amount withdrawn from an account containing commingled funds exceeds the clean funds, [any] individual withdrawal may be said to be of tainted money even if a particular withdrawal was less than the amount of clean money in the account."); *United States v. Haddad*, 462 F.3d 783, 792 (7th Cir.2006) (same).

The Court finds no justification for ignoring *Rutgard* under the circumstances of this case. First, *Rutgard* and *Hanley* clearly instruct that a court may not adopt any presumption in determining whether a transaction involved more than $10,000 in criminally-derived proceeds. See *Rutgard*, 116 F.3d at 1292–93. Instead, the Ninth Circuit explained that the question is whether the defendant "necessarily" transferred the fraudulent proceeds. Second, both of the cases on which the government relies note that the results would be different under Ninth Circuit law. *Haddad*, 462 F.3d at 792 (finding the Ninth Circuit's "all or nothing" approach in *Rutgard* to be "unworkable"); *Davis*, 226 F.3d at 357. It would be disingenuous to apply the presumption established by *Haddad* or *Davis* when those Circuits recognized that *Rutgard* dictated a different result. Third, both *Haddad* and *Davis* cited favorably the Fourth Circuit's decision in *United States v. Moore*, 27 F.3d 969 (4th Cir.1994). *Haddad*, 462 F.3d at 792; *Davis*, 226 F.3d at 357. However, the Ninth Circuit explicitly declined to adopt the presumption created in *Moore*. 116 F.3d at 1292. Finally, the Court finds the distinction sought by the government to be meaningless because under *Rutgard* the question is whether the transaction necessarily involved tainted funds. Whether or not the account balance exceeded the amount of tainted funds does not affect whether or not the transaction necessarily involved $10,000 in tainted funds. Thus, the government's distinction would only be meaningful if the question was whether the transaction necessarily involved any tainted funds.

able doubt that the initial opening deposit of $25,000.00 in the relatives' account consisted of money that Defendant had received from his relatives. Because Defendant's failure to disclose his receipt, use, and control of these funds is the specific unlawful activity underlying the § 1957 charge, the $25,000.00 opening deposit must be characterized as criminally-derived funds.

#### i. Count Seventeen

 Because the initial deposit of $25,000.00 into the Schwab account is consider criminally-derived, the balance of potentially innocent funds in the Schwab account on March 11, 2002 was $66,909.01.[8] *See* (Govt.'s Exh. 452A, line 34; 452B, line 34.) Therefore, check number 115, drawn in the amount of $100,000, was necessarily funded by more than $10,000 in criminally-derived funds. Defendant agrees with this analysis and concedes that judgment of acquittal is not required on Count seventeen. (Def.'s Supp. Brief at 6).

#### ii. Count Eighteen

The government argues that check number 117, drawn in the amount of $62,000, must have necessarily been funded by criminally-derived funds because check number 115 (Count seventeen), exhausted the entire balance of potentially innocent funds. However, the Court cannot conclude that check number 115 necessarily exhausted the account of potentially innocent funds. Check number 115 might have consisted of $65,000 in potentially

innocent funds and $35,000 in criminally-derived funds, or alternatively, check number 115 might have consisted entirely of criminally-derived funds.[9] It is purely speculative whether check number 115 contained any innocent funds, and thus no rational factfinder could determine beyond a reasonable doubt that the account was exhausted of potentially innocent funds at the time check number 117 was written. Because there were potentially $65,000 in innocent funds in the account at the time the $62,000 check was written, the government has failed to prove beyond a reasonable doubt that the monetary transactions at issue in Count eighteen involved at least $10,000 in criminally derived proceeds.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to acquit with respect to Counts nine, ten, eleven, thirteen, fourteen, and eighteen. The Court DENIES Defendant's motion with respect to Count seventeen.

IT IS SO ORDERED.

---

**8.** Although Exhibit 452A-line 34 lists the amount of potentially innocent funds as $65,000.00, the amount of potentially innocent funds was actually $66,909.01. Exhibit 452A fails to take into account deposits of $748.32 and $1,160.69 in potentially innocent funds which were noted in Exhibit 452B. *See* (Govt.'s Ex. 452B lines 2, 4.) However, regardless of whether these two deposits should be included in the balance of potentially inno-

cent funds, the Court's analysis is unaffected by these deposits totaling $1909.01.

**9.** On March 15, 2002, when check number 115 was processed, the account contained $485,434.19 in criminally-derived funds and $65,000 in potentially innocent funds. *See* (Govt's Ex. 452A lines 34–35.) Consequently, check number 115 could have been funded entirely by criminally-derived funds.