**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-30128 |
| Plaintiff - Appellee, | D.C. No. 2:07-CR-00087-WFN-2 |
| v. | |
| MANFRED OTTO SIMON, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-30132 |
| Plaintiff - Appellee, | D.C. No. 2:07-CR-00087-WFN-1 |
| v. | |
| FREDERICK MANFRED SIMON, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
William Fremming Nielsen, Senior District Judge, Presiding

Argued and Submitted May 3, 2010
Seattle, Washington

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: HALL, WARDLAW and GOULD, Circuit Judges.

Frederick Manfred Simon ("Frederick") appeals his convictions of one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, eight counts of mail fraud in violation of 18 U.S.C. § 1341, and eleven counts of wire fraud in violation of 18 U.S.C. § 1343, arguing that the convictions were not supported by sufficient evidence. Frederick also contends that the district court erred in admitting evidence of uncharged conduct, and that his sentence is substantively unreasonable. Manfred Otto Simon ("Manfred") appeals the denial of his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. **Sufficiency of the evidence of a conspiracy**

Frederick and Manfred challenge the sufficiency of the evidence of their conspiracy convictions, arguing that there was no evidence of an agreement to defraud the customers and suppliers of their railway components business, Railway Logistics International ("RLI"). The government, however, introduced sufficient circumstantial evidence that Frederick and Manfred acted with a common goal to defraud RLI's customers and suppliers, from which the jury could find an agreement. *See United States v. Corona-Verbera*, 509 F.3d 1105, 1117 (9th Cir.

2

2007) ("[C]ircumstantial evidence that the defendants acted with a common goal is sufficient . . . to prove agreement, and agreement may be inferred from conduct . . . ."); *United States v. Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997). The evidence showed that Frederick repeatedly defrauded RLI's customers and suppliers by placing and receiving orders for railway components without paying for the orders placed or shipping the orders received. The evidence also showed that Manfred facilitated these transactions by arranging for RLI wire transfers, providing false excuses to suppliers concerning outstanding payments, signing RLI payroll checks, and acting as RLI's vice president and chief financial officer. In addition, the government introduced evidence of Manfred's and Frederick's 1997 conspiracy convictions for a virtually identical scheme to defraud purchasers and suppliers of railway components. Viewing this evidence in the light most favorable to the government, a rational juror could have concluded that Frederick and Manfred acted with the common goal of defrauding the businesses with which RLI transacted. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Corona-Verbera*, 509 F.3d at 1117.

2. **Sufficiency of the evidence of Frederick's mail and wire fraud convictions**

The government introduced sufficient circumstantial evidence of Frederick's intent to defraud RLI's customers and suppliers. *See United States v. Rogers*, 321

3

F.3d 1226, 1230 (9th Cir. 2003) ("It is settled law that intent to defraud may be established by circumstantial evidence."); *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) ("Intent may be inferred from misrepresentations made by the defendants, and the scheme itself may be probative circumstantial evidence of an intent to defraud." (citations omitted)). The evidence showed that Frederick routinely took customer orders, demanded immediate cash payment, and would not ship anything once payment was received. When customers followed up, Frederick would provide a litany of excuses, including that he shipped the goods (but then he would refuse to provide tracking numbers or would provide incorrect tracking numbers); and that the goods were in a warehouse ready to ship (but then he would refuse to allow customers to inspect the parts prior to shipment or would send customers to warehouses not belonging to RLI). Frederick also refused to allow customers to personally pick up orders. When customers demanded delivery or a refund, Frederick cut off all communications.

The evidence also showed that Frederick would submit orders to suppliers for purchase on credit. After suppliers shipped the goods, Frederick would not pay them. When they demanded payment, Frederick would provide inconsistent stories about why he could not pay, including the assertion that he was awaiting payment from the U.S. government on a contract to deliver goods to Iraq. In addition, the

4

government introduced Frederick's 1997 conviction for conspiracy to commit mail and wire fraud based on virtually identical circumstances. Therefore, it would not have been irrational for a juror to conclude that Frederick had the specific intent to defraud RLI's customers and suppliers. *See Jackson*, 443 U.S. at 319.

**3. Sufficiency of the evidence of Manfred's mail fraud convictions**

Manfred contends his mail fraud convictions were not supported by sufficient evidence because Frederick was the moving force behind the specific acts of mail fraud while Manfred's connection to each act was slight. However, the jury was specifically instructed on the *Pinkerton* theory of conspiracy liability, under which Manfred is liable as a co-conspirator for all of Frederick's crimes that were reasonably foreseeable and in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946). Because each of Frederick's mail fraud convictions involved precisely what the conspiracy charged—defrauding sellers and purchasers of locomotive and rail components by obtaining parts from the sellers without paying them, and accepting payments from purchasers without delivering the ordered parts—they were all reasonably foreseeable and in furtherance of the conspiracy. Accordingly, Manfred is liable for those crimes to the same extent as Frederick. *See United States v. Long*, 301 F.3d 1095, 1103 (9th Cir. 2002).

5

## 4. Admissibility of uncharged conduct

The district court correctly concluded that the evidence concerning the uncharged acts and the evidence concerning the crime were "inextricably intertwined," and therefore not evidence of "other acts" inadmissible under Federal Rule of Evidence 404(b). *See United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) ("The policies underlying rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions."). Frederick contracted with the U.S. government to deliver railway parts to Iraq, but never delivered the requested parts. Although it was Frederick, not the U.S. government, who failed to perform on the contract, Frederick would often misrepresent to his customers and suppliers that the U.S. government had not paid him for parts he delivered to Iraq, and that he could not perform on his other contracts until the U.S. government paid him. Had this evidence not been presented, the jury might have believed Frederick's excuse for his nonperformance was legitimate. Therefore, the evidence of Frederick's dealings in Iraq were inextricably intertwined with the charged conduct. *See id.*

Frederick's procurement of a motorcycle by false pretenses, however, was not inextricably intertwined with the charged conduct and, therefore, should have

been excluded under Rule 404(b). However, the admission of this evidence was harmless error. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002) ("If we conclude that a Rule 404(b) violation occurred, we reverse only if the error was not harmless."). The government provided a significant amount of evidence of intent to defraud, including the testimony of sixty witnesses in a trial lasting approximately three weeks. Given the substantial evidence adduced at trial, any error in admitting the motorcycle evidence was harmless.

**5. Sentencing**

The district court did not abuse its discretion in imposing the maximum within-Guidelines sentence of 125 months upon Frederick. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). "Appellate review is to determine whether the sentence is reasonable; only a procedurally erroneous or substantively unreasonable sentence will be set aside." *Id.* Frederick does not argue that the district court committed procedural error; he argues only that his sentence is substantively unreasonable. "In determining substantive reasonableness, we are to consider the totality of the circumstances . . . ." *Id.* We note, however, that Frederick received a within-Guidelines sentence, which "'will usually be reasonable.'" *Id.* at 994 (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)). In imposing the maximum sentence, the district court considered the 18 U.S.C.

§ 3553(a) factors and explained the important needs for deterrence and protection of the public given Frederick's prior conviction of a conspiracy involving a scheme of identical design, his high degree of culpability, the extent of the harm to numerous victims, and the loss of hundreds of thousands of dollars. Therefore, considering the totality of the circumstances, the district court did not abuse its discretion in imposing the maximum sentence. *See id.*

**AFFIRMED.**